**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jessica Matthews, a single woman, | ) | No. CV08-521-PHX-NVW |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) ) | |
| Alhambra School District, a Government entity; Dr. Larry Bauer, individually and as Assistant Superintendent Human Resources of Alhambra School District; Alhambra School District Governing Board, by and through its Board Members: Paul Enniss, President; Billie Foltz, Clerk; Carol Anne Munson, Member; Sandy Peltz, Member; Elizabeth Barbosa, Member, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Defendants (collectively "Alhambra School District" or "the District") move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. #49.) Plaintiff Jessica Matthews ("Matthews") alleges that the District terminated her employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. On the District's motion for summary judgment, the Court views the evidence in the light most favorable to Matthews and accepts the version of all disputed facts most favorable to her. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1054 n.1 (9th Cir. 2003).

**I. Background**

Matthews worked at Granada East School in the Alhambra School District for more than a decade, starting in 1994 as a part-time community liaison, then moving in 1996 to a full-time receptionist position, and finally to a "Clerical-Attendance" position in 2005. During her years as a receptionist, Matthews regularly received pay increases and performance ratings of "superior" or "very good" in all categories. The comments in her performance evaluations note her excellent rapport with the school community, the respect of her coworkers, the high-quality of her work product, and her dedication to her job and the school. The only exception is a 2003 performance evaluation that assigns her a rating of "needs improvement" in the category of cooperation, defined as "[a]bility to successfully deal with people implying willingness and capacity to work harmoniously with others, whether an employee you supervise, supervisor, or peer." The comments on that evaluation note that Matthews "needs to improve her diplomatic skills when dealing with co-workers." The following year, Matthews achieved a rating of "very good" in cooperation.

2005 was a year of changes for the administration at Granada East School. Matthews moved to her new position as a clerical assistant, Alicia Cabello was hired as receptionist, and Sandy Kennedy became the principal. There was tension between Matthews and Cabello. Matthews was forced to continue performing the bulk of her former duties as receptionist due to Cabello's inexperience and her frequent inattentiveness. One confrontation between Cabello and Matthews left Matthews in tears. In an effort to mediate, Kennedy called Matthews and Cabello into her office. During the conversation, Matthews stated "I hate her," referring to Cabello. Kennedy told Matthews that her statement was unacceptable, excused Cabello from the meeting, and asked Matthews why she behaved that way. Matthews would not respond. On a separate occasion, Kennedy asked Matthews to step into her office to discuss the ongoing difficulties between her and Cabello. Matthews refused, saying "Why should I do that for you? I didn't do it for [former principal] Terbush."

In the months following her appointment as a clerical assistant, Kennedy noted several issues with Matthew's performance. On one occasion, the District Office notified Kennedy that it had not received a monthly report for which Matthews was responsible. On another occasion, the District Office returned a report for which Matthews was responsible because it was either inaccurate or incomplete. Kennedy also received complaints that Matthews was not updating attendance and discipline information on a daily basis and that some of the letters she was sending to parents contained erroneous dates. Additionally, Matthews was absent from work thirteen times between July and December 2005. Matthews provided documentation that she was absent for medical reasons on all occasions but one.

In late December 2005 or early January 2006, Kennedy telephoned the District's Assistant Superintendent of Human Resources, Dr. Larry Bauer, to discuss Matthews's behavior and performance. Following that discussion, on January 3, 2006, Kennedy completed a performance evaluation on Matthews, assigning a rating of "needs improvement" in the categories of attendance and dependability, quality and quantity of work, cooperation, knowledge, ability to plan and control, and stability under pressure. She received a rating of "very good" in appropriate dress and "satisfactory" in initiative. Kennedy also created an improvement plan that explained the basis for the low ratings and specified the steps she expected Matthews to take to improve. Under attendance and dependability, Kennedy noted that "Ms. Matthews has been absent 13 days to date" and that this "excessive number of absences has compromised her ability to perform her job well." Matthews concedes that these absences were not FMLA-protected. Under cooperation, Matthews was instructed "not to participate in gossip and/or make negative comments to peers" and to assist "with a positive attitude and willingness to cooperate and get along with peers." Under stability under pressure, Matthews was instructed to "consistently come to work with a positive, cooperative attitude, regardless of the problems that may occur throughout the day." The last two lines of the plan read as follows:

> "*Failure to meet this improvement plan by February 10, 2006 will result in further disciplinary action up to and including a recommendation for termination. Please set up an appointment with me by February 10, 2006 to discuss your progress concerning your job performance.*"

Kennedy met with Matthews on January 12, 2006, to review the performance evaluation and the improvement plan. They went through the two documents and what Kennedy expected of Matthews, and Matthews received copies of the documents.

On January 26, 2006, Matthews informed Kennedy that she needed to undergo some "minor surgery" and would be absent for a period of time, but she did not mention any particulars such as a specific surgery date. Kennedy told Matthews to let her know "when all this is taking place" and to let her know if she needed anything. Neither Kennedy nor Matthews mentioned leave under the FMLA.

Matthews did not schedule an appointment with Kennedy to discuss her progress under the improvement plan by February 10, 2006. She had not read the portion of the improvement plan that required her to schedule an appointment with Kennedy by that date. She says that she thought that Kennedy was going to schedule the appointment with her, but this conflicts with her acknowledgment that she did not even read the entire improvement plan, including the part calling for a meeting with Kennedy to discuss her progress. Kennedy observed that Matthews continued to quarrel with Cabello despite the improvement plan. On February 13, 2006, Kennedy phoned Dr. Bauer and notified him that Matthews had not scheduled the appointment and that her behavior and performance problems had continued. They agreed that Kennedy would complete a final performance evaluation on Matthews and would meet with Matthews on February 17, 2006, to inform her that Kennedy was recommending her termination.

On February 16, 2006, Matthews and Kennedy had a brief conversation outside of the school cafeteria concerning Matthews's surgery. Kennedy inquired whether Matthews had made any arrangement to take FMLA leave. Matthews responded that she did not know what FMLA leave was. Kennedy told her to speak with the District's Health Compliance Officer, Sandy Satterfield, about taking FMLA leave for her surgery.

- 4 -

Matthews did so that same day and her FMLA leave request was approved on February 17, 2006. Kennedy called Dr. Bauer on February 17, 2006, to explain that she could not meet with Matthews that day because Matthews was on leave. They decided to wait until after Matthews returned from leave to inform her of her termination. Matthews returned from leave on Monday, March 13, 2006. On Friday of that week, March 17, 2006, Kennedy met with Matthews to inform her that she was recommending her termination. Kennedy showed Matthews her final performance evaluation, which assigned Matthews a rating of "needs improvement" in all but three categories. Mathews received a "satisfactory" rating in attendance and dependability, appropriate dress, and initiative. Matthews was suspended with pay from March 20, 2006, until April 4, 2006, when her termination became effective.

## II. Analysis

### A. Summary Judgment Standard

Rule 56(c), Fed. R. Civ. P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, discovery responses, and affidavits that demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Where the moving party bears the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). Where the nonmoving party will have the burden of proof, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party has met its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading," but must set forth, by affidavit or as otherwise

provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(e). Summary judgment is not appropriate when the nonmoving party identifies or produces evidence from which a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor. *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999).

### B. The FMLA

The FMLA entitles covered employees to up to twelve weeks of unpaid leave each year for personal medical reasons, to care for their newborn babies, or to care for family members with serious illnesses, and it guarantees them reinstatement after exercising their leave rights. *Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). Matthews's claim that the District terminated her because she took FMLA leave is analyzed under the Act's "interference" provision. *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1124–25 (9th Cir. 2001). That provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615. To prevail on her claim, Matthews must "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder*, 259 F.3d at 1125 (holding that the *McDonnell Douglas* burden-shifting framework is inapplicable to claims under the FMLA's interference provision). It does not matter whether her employer "had additional reasons for the discharge . . . [because] the regulations [29 C.F.R. 825.220(c)] clearly prohibit the use of FMLA-protected leave as a negative factor *at all*." *Id.* at 1131.

Matthews will bear the burden of proof at trial. The District may therefore prevail on its motion simply by showing an absence of evidence that Matthews's taking of FMLA-protected leave constituted a negative factor in her termination. It asserts that Matthews was terminated solely for performance and behavioral reasons.

### 1. Matthews's Performance Before 2005

The District has introduced affidavits from Matthews's coworkers attempting to show that she had cooperation problems even before the changes that took place in 2005. However, Matthews achieved "very good" or "superior" ratings for cooperation on all but one of her evaluations during that time period. Most of her evaluations note her excellent rapport with the school community and the respect of her coworkers. Only her evaluation from 2003 noted that she "needs to improve her diplomatic skills when dealing with co-workers," and the following year she was again assigned a rating of "very good" in cooperation. Overall, the evidence of Matthews's job performance before 2005 is inconsistent and largely irrelevant. Both parties have unnecessarily disputed at length the other side's contentions regarding her pre-2005 performance. This case is about whether Kennedy, who became principal in 2005, terminated Matthews in 2006 in part because of her exercise of FMLA-protected rights.

### 2. Matthews's Performance in 2005 and 2006

The undisputed evidence provided by the District shows that Matthews had been having difficulty cooperating with the new receptionist, Cabello, and had rebuffed Kennedy's attempts to mediate the dispute. Kennedy had further noted several problems with Matthews's performance in her new position. By January 3, 2006, Kennedy was considering terminating Matthews, as evidenced by the negative performance evaluation and improvement plan that she authored on that date. This was several weeks before Matthews first informed Kennedy of her need to take time off for surgery. It is therefore undisputed that the first domino in the sequence leading to Kennedy's termination fell independent of Matthews's FMLA-protected leave. But this does not end the inquiry because "the regulations clearly prohibit the use of FMLA-protected leave as a negative factor *at all*." *Id.* at 1131.

The undisputed evidence shows that Kennedy had decided to recommend termination by February 13, 2006, because Matthews had failed to schedule the appointment required by the improvement plan and had continued to bicker with Cabello.

1 The question is whether Kennedy also faulted Matthews for planning to be absent from
2 work again in the near future.  Matthews believes so because she was fired within one
3 week of returning from FMLA-protected leave.  "The proximity in time between the
4 leave and her termination also provides supporting evidence of a connection between the
5 two events."  *Liu*, 347 F.3d at 1137 (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d
6 151, 159–60 (1st Cir. 1998)).  But it is undisputed that Kennedy had originally intended
7 to terminate Matthews on February 17, 2006, before she learned the date that Matthews
8 was scheduled to have surgery.  Shortly after Matthews failed to schedule the required
9 appointment, Kennedy had communicated to Bauer her intention to meet with Matthews
10 on February 17, 2006, to inform her of the termination.  Kennedy delayed the termination
11 upon learning that Matthews would be out that day for her surgery.

12 Taken altogether, the circumstances dispel any inference created by the timing of
13 Matthews's termination.  Matthews failed to schedule the required appointment, she
14 refused even to read the entire improvement plan, and she continued to squabble with
15 Cabello.  Kennedy scheduled to terminate Matthews before she even learned the date of
16 the surgery, she allowed Matthews to take her leave once she learned the date, and she
17 gave Matthews a satisfactory rating for attendance in her final evaluation.  Under such
18 circumstances, temporal proximity alone is not enough to defeat summary judgment
19 because the rest of the undisputed evidence clearly explains the coincident timing of
20 Kennedy's decision and Matthews's FMLA-protected leave.  *Cf. Coszalter v. City of*
21 *Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (explaining that the length of time between a
22 protected activity and an adverse employment action should not be considered "without
23 regard to its factual setting").

24 Matthews relies on two circumstances to support an inference "that use of
25 FMLA-protected leave [was] a negative factor" in the decision to terminate her, which
26 was made on or around February 13, 2006.  *Bachelder*, 259 F.3d at 1131.  One is that
27 Kennedy already knew on January 26, 2006, that Matthews needed to have surgery and
28 would be away from the office for some time.  But mere knowledge cannot bear the

weight that Matthews places on it, or else impending FMLA-protected leave could cloud all otherwise justified employer action. Something more is needed to nudge mere knowledge of upcoming leave into the category of "a negative factor." Matthews cites no authority that the nudge is built into the knowledge. The undisputed circumstances of this case dispel any inference of an FMLA-forbidden purpose created by Kennedy's knowledge, for Kennedy saw to it that Matthews got the FMLA benefits that she was entitled to.

Second, Matthews points out that Kennedy had noted in the improvement plan that "Ms. Matthews has been absent for 13 days to date" and that her "excessive number of absences has compromised her ability to perform her job well." Matthews conceded at oral argument that those earlier absences, all but one of which are assumed on this record to have been justified and documented, were not FMLA-protected. Matthews construes Kennedy's criticism of those unprotected absences as evidencing her general negative view of Matthews's attendance, which taints Kennedy's decision to terminate her in close proximity to her FMLA-protected leave. The theoretical inferential force Matthews ascribes to Kennedy's criticism of the unprotected leave fails to take account of the undisputed care Kennedy took to ensure that Matthews got the FMLA benefits to which she was entitled. It also fails to take account of the undisputed explanation of the timing for Kennedy's decision-making. To allow such an inference here would be to indulge in guessing in disregard of circumstances. Moreover, it would vest federally permitted conduct—faulting an employee for excessive absences that are not protected by the FMLA—with liability-bearing effect. The practical effect would be to permit liability, otherwise not shown, to flow from conduct Congress chose not to sanction.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (doc. # 49) is granted.

1     IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 26th day of August, 2009.

_____
Neil V. Wake
United States District Judge